THE TOWN OF HAMDEN *vs.* THE NEW HAVEN AND NORTH-AMPTON COMPANY AND THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

Where a railroad corporation has been authorized by law to alter highways, for its own convenience in building its road, upon condition that it should restore such highways to their former state of usefulness—and the corporation has altered such a highway, but has failed so to restore it, and has left it in an unsafe condition—and the town to which the highway belongs has suffered it to continue in the same condition and has consequently become liable in an action brought against it by a third party for injuries sustained by him through the defectiveness of the highway—the railroad corporation is bound to indemnify the town for the judgment recovered against the town in such action and for the costs and expenses incurred by the town in defending the action.

In such a case the obligation of the railroad corporation to restore the highway to its original condition of safety and usefulness, remains constant until performed;—and in the mean time the alteration made in the highway is a continuing nuisance;—and whenever, during the continuance of the nuisance, an injury occurs by reason thereof, whereby a third party acquires a right of action against the town, the corporation becomes liable to indemnify the town, and can not, at any time, protect itself against such liability on the ground that the statute of limitations would bar an action for the original construction of the nuisance. (Ellsworth, J. dissenting.)

*It seems* that the town may look for its indemnity, in such a case, to the railroad company which originally altered the highway—even though the injury should occur after that company has leased its road to another company, and while the lessees are operating the road under a contract devolving upon them, as between themselves and the first company, the duties and obligations of the first company.

THIS was a case submitted to the superior court, under the statute with regard to amicable submissions, upon a statement of facts agreed upon, and reserved by that court for the advice of the supreme court of errors.

The facts are as follows : The New Haven and Northampton Company, in the year 1847, constructed their railroad through the town of Hamden, under the provisions of their charter, and in doing so it became necessary to intersect a highway which was one of the principal thoroughfares of the town, and to construct the railroad across the same. For that purpose it became necessary, in order to accommodate the public travel and to make the railroad upon the best site of ground, to change the location of the traveled part of the highway, within the original limits of the highway, and to raise it by embankments above the adjoining ground and above its former level to the same level with the railroad; whereupon, with the knowledge of the selectmen of the town, such a change in the location was made by the railroad company, and embankments were raised at the place of intersection on each side of the railroad, on which the company constructed the traveled part of the highway within its original limits, so as to give an easy grade for its approach to the level of the railroad; but no railing for the protection of travelers was ever erected by the sides of the highway thus raised.

The charter of the railroad company authorized them to alter any highway which should be so located that the railroad could not be judiciously laid out and constructed across or upon the same without interfering therewith, in such manner that the railroad might be made on the best site of ground for the purpose, provided that the railroad company should put the highway so altered in as good repair as at the time of altering the same. Another clause of the charter required them, when crossing any highway, to restore it to its former state in sufficient manner not to impair its usefulness. The general statute with regard to railroad companies contains substantially the same provisions.

The railroad was completed and continued to be used by the New Haven and Northampton Company until the 1st

day of July, 1848, when that company leased it to the New York and New Haven Railroad Company, by a written lease, under which the latter company continued to hold, use and occupy the road down to the time of the suit. The embanked part of the highway, from the time of the alteration, was used and traveled upon as part of the public highway of the town of Hamden; and the town never requested either of the railroad companies to erect a railing upon the embankment, or gave them any notice on the subject.

In 1855, one Baker and his wife, in a very dark night, while traveling in a wagon upon the highway, near its intersection with the railroad, at a point within the limits of the railroad as laid out but not within the part used for railroad purposes, were, without fault on their part, thrown off the side of the embankment of the highway, by reason of there being no railing on the sides thereof, and the wife was thereby seriously injured and the wagon and harness were broken. Suit was brought by them against the town, to recover damages for the injury, returnable to the October term, 1856, of the superior court in New Haven county. Immediately after the service of the writ the town notified both the railroad companies of the suit, and requested them to defend it, claiming that they, or one of them, would be liable to respond to the town for damages if any were suffered; but both companies declined to defend the suit, insisting that neither of them was liable. The suit came by continuance to the December term, 1857, of the superior court, the town having continued to defend the same, at which term it was, with the consent of both companies, compromised by the town, under an agreement that the question of the liability of the companies or either of them to the town, for the damages or expenses incurred by the town by reason of the suit, or for any part thereof, arising upon the facts above stated, should be adjudicated by a submission to the superior court in the same manner and to the same effect as if the suit had been prosecuted to final judgment and a recovery had in favor of the plaintiffs therein against the town. The town paid to those plaintiffs, in compromise of the suit, $425, and incurred law

expenses amounting to $102 in defending the suit, and expenses amounting to $21 for services of the selectmen in attending to the case and preparing it for trial.

*R. I. Ingersoll* and *C. R. Ingersoll* for the plaintiffs.

1. The charter of the railroad company and the general railroad act make it the duty of the company, when crossing any highway, to restore the "highway thus intersected to its former state or in sufficient manner not to impair its usefulness." 4 Private Acts, 890. Stat., (comp. 1854,) 748, sec. 12. This duty has never been performed, and the injury for which the town was sued was occasioned by their neglect of it. The obligation upon the company was constant until performed; and although the company might absolve itself by an application to a judge of the superior court and his appointment of three disinterested persons to determine whether the corporation had complied with the charter, (sec. 6, Private Acts of 1846, p. 88,) yet this has never been done. The embankment made by the company and left unsafe without a railing, was an unlawful interference with the public travel, not authorized by the charter or by the public law, and was a nuisance every day while it was thus kept there. " A town which has been compelled to pay damages for an injury from a defect in a highway, occasioned by a nuisance placed there by an individual, may recover of the latter damages." *City of Lowell* v. *Short*, 4 Cush., 275. *Lowell* v. *Spalding*, id., 277. The doctrine has been expressly recognized, that a railroad corporation will be held liable for damages paid by a town for a defective road built by the corporation in lieu of an old road taken for the railroad, and for the costs and expenses in defending the suit against the town— the corporation having, as in the present case, been notified, and having declined to interfere. *Willard* v. *Newbury*, 22 Verm., 458. *Duxbury* v. *Vermont Central R. R. Co.*, 26 id., 751. *Barber* v. *Essex*, 27 id., 62. Redfield on Railways, 391. It was peculiarly the duty of the corporation to guard against injury to the public travel, because the defect was within the limits taken for their railroad purposes.

2. The lease of the railroad by the New Haven and Northampton Company can not transfer their liability to another corporation. *Beman* v. *Rufford*, 6 E. L. & E., 106. *Gt. Northern Railway Co.* v. *Eastern Counties Road*, 12 id., 224. *Winch* v. *Birkenhead, &c. Railway Co.*, 13 id., 506. *Nelson* v. *Vermont, &c. R. R. Co.*, 26 Verm., 717.

*Beach,* for the New Haven and Northampton Company.

1. It was the duty of the town to keep this highway in repair, unless that duty devolved upon one or the other of these defendants. Rev. Stat., tit. 24, sec. 1.

2. It is no part of the duty of a railroad company to keep in repair the highways which they may have occasion to intersect. If they temporarily obstruct a highway in the act of building their railroad, and thereby cause an injury, the town, though primarily liable, has its remedy against them, because the town, having no power to prevent the act and no reasonable opportunity of guarding against its consequences, is not in fault. *Lowell* v. *Boston and Lowell R. R. Co.*, 23 Pick., 24. But after the railroad has been constructed and the highway surrendered to, and adopted by, the town, there is no reason or law for imposing a continuing obligation for its repair upon the railroad company.

3. There is no responsibility to the town growing out of the claim that the highway was not restored to its former usefulness. 1st. That it was, in fact, so restored, is demonstrated by its continued use as a principal thoroughfare without complaint for ten years. 2d. It is too late for the town now to deny that which, by their acquiescence, they have so long admitted.

4. If either company is to be made responsible it must be the New York and New Haven Company. 1st. By the terms of the lease that company agrees "to keep said road and all its bridges, fixtures, and appurtenances in good and thorough repair during the full term of this lease;" and "to surrender all the demised premises at the expiration of said term in good repair." 2d. If the duty of keeping the highway in repair devolves upon either company, it must result

from the fact that this portion of the highway is appurtenant to and part of the railroad. 3d. The New York and New Haven Company, having accepted the railroad under the lease with full knowledge of all defects in its construction, if any existed, and having agreed to surrender the same at the expiration of the lease in good repair, are alone responsible under their contract for any damages resulting from their neglect to remedy such defect. 4th. As lessees of the road, being its exclusive occupiers and controllers, they are primarily liable for any damages resulting from a defect in its construction. Redfield on Railways, 373. *Clement* v. *Canfield*, 28 Verm., 302.

*Baldwin*, for the New York and New Haven Railroad Company.

1. It must be conceded that the highway was one which it was the duty of the town to "maintain." Consequently the town was bound to erect and maintain a sufficient railing upon the highway, wherever such railing was necessary for the protection of travelers. The accident occurred from the want of such a railing through the neglect of the town, and by reason of that neglect the town became responsible for the damages. It was not only the duty of the town to have a railing there at the time of the accident, but it had then been, on the part of the town, a neglected duty for more than six years. Now an individual or a corporation against whom damages have been recovered by reason of its own willful negligence, can not obtain indemnity from another; such a claim is contrary to the sound and well settled rule of public policy, that there can be no contribution among wrong doers. There could be no better case than the present one to vindicate the good sense of that rule. If towns, knowing their highways to be unsafe, can neglect the duty of putting them in repair without danger to themselves, on the ground that, though primarily responsible, they can look elsewhere for an indemnity, there would be no safety to the public. The case of *Lowell* v. *Boston and Lowell R. R.*, 23 Pick., 24, does not conflict with this principle; in that case the negligence of

the town was constructive only, and it was conceded in that case that if the negligence had been actual there could have been no claim to indemnity. Here the neglect of the town to perform an admitted duty has been willful and continued for more than ten years.

2. A railroad company is bound only to restore the highway to its former usefulness—not to keep it in repair. The duty of maintaining a railing is imposed by statute upon the corporation which is bound to maintain the highway. If in this case the railroad company was bound to erect a railing in order to restore the highway to its former usefulness, and if the company refused to discharge that duty, the proper remedy of the town would have been to erect the railing and sue the company for the expense incurred in erecting it; in which case the damages recoverable would have been measured by the expense of the railing. But the town was not at liberty to neglect its duty until some citizen was injured, and then to recover the damages, to which it had been subjected by its own negligence, out of the railroad company. 2 Parsons on Cont., 454. *Loker* v. *Damon*, 17 Pick., 284.

3. The cause of action accrued against the company for neglect of duty, eleven years ago, if at all, and is therefore barred by the statute of limitations.

4. As between the two companies, the company liable to the town, if either be liable, is the New Haven and Northampton Company. There is no privity between the town of Hamden and the lessees of that company.

HINMAN, J. One question submitted to our consideration in this case is, which of the two railroad corporations that are parties to the case is liable to indemnify the town, provided the court is of opinion that either of them is so liable.

The injury for which the town has been subjected to damages was caused by an embankment in the highway built by the New Haven and Northampton Company, in order to raise the grade of the highway to a level with the track of their railroad. It was a work, therefore, connected with the construction of that railroad, in which the New York and

New Haven Company had originally no interest whatever; and although the latter company are now operating that road under a written lease, yet the terms of it are not before us, and we can only say that we know of no facts which are sufficient to shift any liability, growing out of the neglect to complete the embankment as a substituted highway, from the company primarily liable therefor. The lease to the New York and New Haven Company, though referred to as having been made a part of the case, has not been furnished us, and therefore can not be considered. We suppose, however, that as third persons can not be presumed to be conversant with the private arrangements of the two companies, they may look to the corporation which is bound by its charter to perform the work which is claimed to have been negligently done.

If there is any arrangement between the two companies, by which one of them is, by contract, to perform this work for the other, that may raise a question of indemnity between them, which can be settled between themselves, or made the subject of a subsequent suit, as they shall determine. We have not the facts which would enable us to determine it, and shall not, therefore, attempt it. But the principal question in the case is, as to the liability of either of these corporations to indemnify the plaintiffs against the damages which have been recovered of the town, in consequence of the neglect to erect a sufficient railing on the sides of the embankment where the highway crosses the railroad.

The charter of the New Haven and Northampton Company, (4 Private Acts, 890,) authorizes the company to so change or alter any highway which is so located that the railroad can not be judiciously laid out and constructed across or upon the same without interfering therewith, in such manner that the railroad may be made on the best site of ground for that purpose, provided that said corporation shall put said road in as good repair as at the time of altering the same. Another provision of the same section makes it the duty of the company, when crossing any highway, to restore it to its former state, or in sufficient manner not to

impair its usefulness; and similar provisions are to be found in the general statutes, in relation to all railroads, where they intersect or cross any highway. Rev. Stat., (comp. 1854,) 748, sec. 12.

It is obvious that, without the authority of the legislature, the railroad corporation would have no right to interfere in any way with any ordinary road or highway, and every obstruction which such corporation might cause to be placed in such a road would stand upon the same ground as an obstruction similarly placed by any individual; and an obstruction endangering the public travel would be a nuisance, for which the party placing it there would be liable in damages in case any injury should be caused by it. *Linsley* v. *Bushnell*, 15 Conn., 225. The railroad corporation then, in order to justify the placing of this embankment in the highway, resort to their charter, and to the general statute authorizing it. But neither the charter nor the general statute authorize it except upon terms, and these terms are contained in the provisos which have been referred to. They are very explicit. There is no uncertainty in respect to their meaning, and they only authorize the old highway to be altered, provided it is restored to its former state, or put in as good repair as at the time of altering the same.

We suppose, if the accident for which Baker recovered damages of Hamden had happened while the railroad corporation was engaged in making the embankment, or so soon after its completion that the town could not be presumed to have notice of its condition, that no doubt would exist as to the liability of the company to indemnify the town. The case of *Lowell* v. *Boston and Lowell R. R. Co.*, 23 Pick., 24, seems to be conclusive upon this point, and the authority of that case has not been questioned by counsel on either side. It is said, however, that in such case the town, having no power to prevent the act, and no reasonable opportunity of guarding against its consequences, is in no fault, and therefore can call for an indemnity, which it is insisted the town can not do after it has had sufficient notice of the defect, and has had a fair opportunity to repair it, which it has neg-

lected. But in all cases of the recovery of damages against a town by reason of a defective highway, some neglect of duty is always implied. If by some unexpected event, as the sweeping away of a bridge by a freshet, an injury is caused, the town is not liable until a sufficient time has elapsed, so that its knowledge of the fact may be presumed, and it has had time to provide against it. There must, therefore, be some negligence or there is no liability, and if the town is once put in the wrong by its negligence, from the very nature of the case it is impossible to say when such neglect has continued long enough to prevent the town from recovering an indemnity. The law will not undertake to measure the extent of the wrong on any question of this sort. We do not think, therefore, that the right of the town to an indemnity can be determined by a consideration of the length of time that the defect has continued. It is true, as we have said, that there must be a wrong in the town in order to subject it to damages caused by a defective road. But in cases where the defect is in consequence of the neglect of a railroad to restore a highway to its former state, the wrong is rather technical than real as respects the town. It consists rather in imputing to the town, as between it and third persons who have received injuries arising from such defects, the neglect of the railroad corporation, which, by its charter and the general laws of the state in relation to the subject matter, was bound to restore the highway to its former state of usefulness, and thus to repair or remedy the defect which it alone had caused for its own interest and convenience. The town is prevented from interfering with the building of the railroad by the authority of the legislature, until the company has completed its works; yet while in this condition it is held liable for a neglect which it has no power to prevent. It is equitable, therefore, that the party whose absolute duty it is to restore the road to its former state of usefulness, should indemnify it from the consequences of such a liability; and it appears to us that it would be unjust to apply to the town, under these circumstances, the principle that there shall be no contribution between joint wrong doers. The relation

between the town and the railroad corporation is more analogous to that which exists between master and servant, where the master is bound to indemnify the servant for acts indifferent in themselves and depending on circumstances whether they are unlawful. The corporation is made superior to the town by the legislative authority to do the act, that is, to alter or change the highway, and there is no power of control in the town as to the mode in which it shall be done, and yet it is responsible if it is not done according to the requirements of the statute. Under such circumstances it is difficult to resist the equity of the claim for an indemnity; and we think the answer which a man unacquainted with technical rules would give to the question, whether under such circumstances the railroad corporation was bound to make the indemnity, is the answer which the law ought to to give to it.

It has been suggested that the statute of limitations might apply to protect the corporation against this liability, but the statute will not protect a party against the continuance of a nuisance, every continuance of which is said to amount to a new nuisance. The railroad charter does indeed legalize the erection of the embankment upon condition that it shall restore the road to its former state of usefulness, which can only be done by erecting good and sufficient railings on the sides of it, and until these railings are erected the embankment is a nuisance to the highway notwithstanding its usefulness to the railroad. If the railroad corporation was prosecuted for a nuisance it must justify under its chartered powers, but it has no power in relation to this subject except upon the prescribed terms, and having failed to perform these it must fail in its justification.

It was suggested also, that the town was bound to proceed against the corporation, to compel it to restore the road, by mandamus or otherwise. But we think this no answer on behalf of the corporation, even if it be admitted that it has power to do so. The railroad company can not be allowed to say, as an answer to the claim for an indemnity against its neglect of duty, that the town ought to have prosecuted

Hamden v. New Haven & Northampton Co.

us for the neglect, and because it has not done so the claim is now a stale one.

We have no occasion to inquire here as to the effect of the lapse of sufficient time from which to raise a presumption that the highway was in fact restored to its former state by the erection of the necessary railings. The time since this embankment was first made is too short for any such question to be raised, and the whole case therefore is resolved into the question whether the right to an indemnity, as against the railroad corporation, is limited to the short period which was sufficient to give the corporation a fair or reasonable opportunity to make and complete the restoration of the highway, which by their charter they were bound to restore. We think there is no such limitation. None is spoken of in the case of *Lowell* v. *The Boston and Lowell Railroad Co.*, before referred to, and although the circumstances of that case did not make it necessary to consider the point particularly, yet, had the case in fact rested upon any such limitation, it is scarcely possible that it should not have been noticed. Nor is any such limitation to the right of a town to recover an indemnity for damages to which it has been subjected for a defective road built by a railroad corporation, made in any of the Vermont cases which have been cited, in which such indemnities appear to have been recovered. We think, therefore, that no such limitation exists, and we advise judgment to be rendered against the New Haven and Northampton Company for the amount claimed by the plaintiffs as an indemnity.

In this opinion Storrs, C. J. concurred.

ELLSWORTH, J. thought that, assuming it as true that the omission of the railroad company in 1847, was the cause of the injury suffered by Mr. Baker and his wife in 1855, (which seemed to him to be going as far as it would do, since in 1847 the railing might not have been necessary, or if then put up might not have lasted until 1855,) the town of Hamden ought not to recover, in as much as the supposed omission was of more than six years standing, and no cause was

shown why the statute of limitations should not apply; and further, because the town whose duty it had been during all this time to keep this part of their highway in repair, had openly, knowingly, and continually neglected their duty, and allowed what at the time was a trifling default, if any at all, to become the *occasion* of a great and aggravated injury. He thought the damages which the town had suffered were not consequential nor proximate in their relation to the omission of the railroad company, any more than if a person should carelessly break in another's window, and the latter, instead of getting it repaired at a trifling expense, should choose to leave it broken, and let the storms beat in and ruin the furniture and injure the house itself, and then sue for the entire loss, and should insist that such loss was the consequential and proximate result of the breaking of the window.

He thought, that as it was the admitted and peculiar duty of the town to keep this highway in a safe condition, it was their neglect which was the proximate and true cause of the injury for which they had been adjudged liable, although remotely some default in the railroad company might possibly have contributed to their liability. On these grounds he was of opinion that the town should not recover.

> Judgment against the New Haven and
> Northampton Company advised.